IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| PATRICIA L. RINGGOLD, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-524-W |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. <u>Administrative History and Medical Evidence</u>

On July 6, 2010 (protective filing date), Plaintiff filed her applications for benefits. (TR 239, 289). At that time, Plaintiff was 41 years old. She alleged that she became

1

disabled on October 11, 2009, due to depression, anxiety, and bipolar disorder. (TR 292). Plaintiff has an eleventh grade education, and she described previous jobs as a bakery/deli worker, cashier, courier, housekeeper, cook, telemarketer, and customer representative. (TR 293, 321). Plaintiff was last insured for Title II disability insurance benefits on March 31, 2013. (TR 289).

Plaintiff received treatment between November 2007 and August 2009 from a nurse practitioner, Ms. Moore, in Arkansas. Plaintiff was prescribed medications for depression and high blood pressure. (TR 381-390). Plaintiff stated in August 2009 that she had been warned at her job about her "crappy attitude" and being late for work. (TR 381).

In a written Function Report completed for the agency in July 2010, Plaintiff stated that she was taking only her prescribed blood pressure medication and that she had not taken her "other meds" since January 2010. (TR 318). There are no records of medical treatment of Plaintiff between August 2009 and October 2010.

In September 2010, Plaintiff underwent a consultative mental status examination conducted by Cynthia Repanshek, Psy.D. (TR 411-414). Plaintiff reported constant depression since 2003, problems with anxiety, difficulty sleeping, she rarely left her home, she was easily angered, and she had feelings of sadness and irritability, poor motivation, and social withdrawal. She denied suicidal thoughts or history of suicide attempts. Plaintiff reported she was not taking psychotropic medications, although she had previously been prescribed anti-depressant and sleeping aid medications. She reported a history of using illegal substances, including methamphetamine for a three year period, and stated she

2

continued to use marijuana on a daily basis.

Plaintiff stated she last worked in a deli-bakery in September 2009 but resigned when she moved from Arkansas to Oklahoma. A mental status examination did not reveal any deficits. Dr. Repanshek noted that Plaintiff demonstrated no attention or concentration deficits, she was fully cooperative, she demonstrated good insight, and there was no indication of abnormal mentation, abnormal thought processes, or obvious indications of psychosis. Plaintiff's mood was generally euthymic, and her affect was consistent with her mood. The diagnostic impression was dysthymic (mild depression) disorder, generalized anxiety disorder, and cannabis abuse. (TR 413).

Plaintiff sought treatment for complaints of depression and anxiety in October 2010 at Hope Community Services, Inc. ("Hope"). (TR 435-436). She reported she had previously been prescribed medications for depression and bipolar disorder, but that she was not taking any medications. (TR 435). A psychiatrist at Hope, Dr. Cuka, conducted a medication management interview with Plaintiff in October 2010 and diagnosed Plaintiff with bipolar I disorder. (TR 436). He prescribed mood-stabilizing, anti-depressant, and sleeping aid medications for Plaintiff. Dr. Cuka noted Plaintiff was pleasant and interacted appropriately. She exhibited some circumstantial but logical thought processes, euthymic affect, and no memory, concentration, or cognition deficits.

At that time, Plaintiff stated to a Hope therapist that she was living with a friend and providing home maintenance in return for free rent, but she lacked motivation, and she was using illegal substances daily. (TR 442). Although Plaintiff had a 23-year-old son and a 16-

3

year-old daughter, Plaintiff stated she had little contact with her children for several years (TR 450). Plaintiff stated she completed the eleventh grade and left school when she had a child. (TR 461).

In November 2010, Plaintiff sought treatment at a family medical clinic and was seen by Dr. Mejia. (TR 501). Plaintiff stated she had previously been diagnosed with high blood pressure but had not been taking medication for this condition. She stated she was stable on medications prescribed at Hope for bipolar disorder and depression. A physical examination was reportedly normal, and blood pressure medication was prescribed. (TR 502).

Plaintiff returned to Hope in December 2010, and her mood stabilizing medication was changed due to side effects. (TR 506). Plaintiff reported to a therapist at Hope in December 2010 that she was feeling better. (TR 509).

Plaintiff returned to Dr. Mejia in January 2011 for follow-up treatment, and she reported she was taking the previously-prescribed blood pressure medication, had not experienced side effects, and she was stable on the medications prescribed for her at Hope. (TR 519).

Plaintiff saw a nurse practitioner, Ms. Rollins, at Hope in March 2011. Her anxiety and sleeping aid medications were changed due to side effects. (TR 593). Plaintiff returned to Ms. Rollins at Hope in June 2011. She complained of increased anxiety due to personal relationship problems, and an anti-anxiety medication was prescribed. (TR 589). In August 2011, Plaintiff saw Ms. Rollins and stated she was doing "all right" and had been approved for housing assistance. (TR 585). In September 2011, Plaintiff's anti-depressant medication

4

was changed by Ms. Rollins at Plaintiff's request. (TR 583). Plaintiff reported she was looking for a part-time job and she had undergone gallbladder removal surgery.

In October 2011, Plaintiff reported to Ms. Rollins at Hope that her symptoms had improved on the prescribed anti-depressant and anti-anxiety medications. (TR 581). In November 2011, Plaintiff reported her medications were working well without side effects, and she was working part-time. (TR 579). In March 2012 and in April 2012, Plaintiff again reported to Ms. Rollins that she was "all right" and her medications were working well. (TR 573, 577). Her medications were continued in July 2012. (TR 571).

There is a gap in Plaintiff's treatment records at Hope between July 2012 and February 2013. Plaintiff requested treatment at Hope again on February 27, 2013, and reported she had moved to Arkansas in September 2012 and returned to Oklahoma in February 2013 because her "Social Security case [was] possibly going to court." (TR 557). Plaintiff reported a history of using illegal substances, including methamphetamine, and obtaining anti-anxiety medication from other individuals. (TR 556, 557). Plaintiff stated she was experiencing mood swings, depression, anger, anxiety, difficulty sleeping, and audio hallucinations. She denied using methamphetamine but the therapist noted she had sores all over both arms.[1] Plaintiff reported she was working part-time. (TR 562). The interviewing therapist noted that Plaintiff was not "completely truthful" during the interview. (TR 557).

Plaintiff was prescribed mood stabilizing, anti-depressant, and anti-anxiety

---

[1]Skins sores are widely known to result from use of methamphetamine. See http://www.livestrong.com/article/122799-effects-crystal-meth-skin/.

5

medications. At her follow-up medication management reviews in March 2013, in June 2013, and again in August 2013, Plaintiff reported to Ms. Rollins that her medications were working well without side effects. (TR 564, 566, 568).

Plaintiff underwent a consultative psychological evaluation conducted by Dr. Crall on February 5, 2013. (TR 537-540). Based on an interview and mental status examination, Dr. Crall diagnosed Plaintiff with major depressive disorder, moderate, bipolar disorder by report, generalized anxiety disorder, post-traumatic stress disorder ("PTSD") (provisional), attention-deficit/hyperactive disorder ("ADHD") (provisional), and amphetamine abuse by history. (TR 540). As a general impression, Dr. Crall noted that "Plaintiff's ability to engage in work-related mental activities, such as understanding and remembering and to persist at such activities was likely adequate for [the performance of] simple and some complex tasks." (TR 540). Dr. Crall also noted that Plaintiff's mental impairments of depression, anxiety, and attention difficulties, as well as "chronic pain, and lack of high school diploma/GED likely interfered with her ability to obtain and maintain competitive employment." (TR 540).

Dr. Crall completed a written questionnaire entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (TR 541-542). On this form, Dr. Crall indicated with check marks that Plaintiff had a "marked" impairment in understanding, remembering, and carrying out complex instructions, a "mild" impairment in understanding, remembering, and carrying out simple instructions, a "marked" impairment in interacting appropriately with the general public, a "marked" impairment in interacting appropriately

6

with supervisors, a "marked" impairment in interacting appropriately with co-workers, and a "marked" impairment in responding appropriately to usual work situations and to changes in a routine work setting. As support for these findings, Dr. Crall noted her diagnostic assessment for Plaintiff as well as Plaintiff's subjective reports of "depression, anxiety, irritability, concentration problems, [and] history of verbal outbursts."

Plaintiff appeared and testified at a hearing conducted on September 10, 2013, before Administrative Law Judge Shepherd ("ALJ"). (TR 31-61). Plaintiff testified that she did not have any physical problems and that she had been terminated from a previous job as a warehouse worker for excessive absences. She testified that her usual daily activities included cleaning her house, playing with her dog, attending doctors' appointments, riding the bus, attending group therapy, watching television, listening to the radio, cooking dinner, and visiting with friends.

A vocational expert ("VE") also testified at the hearing. The VE described Plaintiff's previous jobs and testified concerning the availability of jobs for hypothetical individuals.

II. ALJ's Decision

In a decision entered December 18, 2013, the ALJ found that Plaintiff met the insured status requirements for Title II through March 31, 2013, and that she had not engaged in substantial gainful activity since October 11, 2009. Continuing with the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to generalized anxiety disorder, major depressive disorder, bipolar disorder, PTSD (provisional), and ADHD (provisional). At step three, the ALJ found that

7

Plaintiff did not have an impairment or combination of impairments that satisfied or medically equaled the requirements of a listed impairment.

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels limited by the following: "the claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, and usual work situations, but have [only] occasional contact with the general public." (TR 18).

Relying on the VE's hearing testimony, the ALJ found that Plaintiff was not capable of performing her previous job as a housekeeper. Reaching the fifth and final step of the sequential analysis, and again relying on the VE's hearing testimony, the ALJ found that, given her RFC for work and vocational characteristics, Plaintiff was capable of performing other jobs available in the economy. The ALJ identified the unskilled, specific vocational preparation ("SVP") level two jobs of hospital cleaner, price marker, and storage facility rental clerk. (TR 24). Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied.

Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on March 31, 2013. (TR 289). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2013. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per*

9

*curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

IV. Evaluation of Dr, Crall's Medical Source Statement

Plaintiff first contends that the ALJ erred in evaluating the opinion of the consultative psychological examiner, Dr. Crall. The ALJ is required to consider all medical opinions in the record. 20 C.F.R. §§ 404.1527©, 416.927©. An ALJ must also discuss the weight assigned to each medical opinion. Id. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). There are specific factors that the ALJ should consider in determining what weight to give to a medical opinion. Id. §§ 404.1527©, 416.927©.

The ALJ's decision reflects consideration of Dr. Crall's report of her psychological evaluation of Plaintiff as well as the mental RFC statement that accompanies her report. The ALJ reasoned that the mental RFC statement should be accorded only "little weight" except that the ALJ found Plaintiff would not be capable of performing semi-skilled work. The ALJ explained that Plaintiff "would be able to sustain unskilled work based on consideration of the medical evidence of record and the claimant's reported activities of daily living." (TR 23).

Plaintiff contends that the ALJ's decision provides no reason for rejecting Dr. Crall's findings that she would have markedly limited abilities to interact with supervisors and co-workers and to respond to usual work situations and changes in routine work settings. However, the ALJ's decision reflects reasons that are well supported by the record for giving "little weight" to Dr. Crall's findings of "marked" impairments in these work-related

functional abilities.

As the ALJ described in the decision, Plaintiff's records of treatment at Hope indicate that Plaintiff's symptoms improved when she took her prescribed medications, she continued using illegal substances and did not provide truthful or consistent accounts of her history of substance abuse, and she reported fairly normal daily activities.

Further, as the ALJ pointed out in the decision, Dr. Repanshek did not find any mental deficits in a mental status examination of Plaintiff conducted in September 2010, and the state agency consultant, Deborah Hartley, Ph.D., whose opinion was accorded some weight by the ALJ, provided an RFC assessment indicating Plaintiff had the ability to perform simple and complex tasks, relate to others on a superficial basis, and could adapt to a work situation. (TR 430-432). The ALJ did not err in evaluating Dr. Crall's mental source statement which assessed Plaintiff's mental RFC for work.

## V. ALJ's Step Four RFC Assessment

The ALJ's RFC assessment includes limitations in Plaintiff's mental functional abilities, including the ability to perform only simple, routine, and repetitive tasks and the ability to have only occasional contact with the general public. Plaintiff contends that the ALJ erred in assessing her mental RFC for work. Plaintiff's argument is directed toward Dr. Crall's findings that she would be markedly impaired in her abilities to relate to supervisors and co-workers and respond appropriately to usual work situations. But the ALJ provided reasons that are well supported by the record, as previously found, for giving only little weight to Dr. Crall's RFC findings of "marked" limitations in abilities to relate to supervisors

and co-workers and respond appropriately to usual work situations.

Plaintiff also argues that the ALJ's decision refers to selective portions of the medical evidence and her testimony and fails to express consideration of other evidence. But Plaintiff's argument brushes in overly-broad strokes and contains generalizations followed by serial references to pages in the medical and nonmedical evidence.

In the ALJ's decision, the ALJ points to inconsistencies in Plaintiff's statements concerning her abuse of illegal substances as a reason for discounting her credibility. (TR 21). The record reflects that Plaintiff provided inconsistent statements to treating and consultative examiners concerning her drug usage. A treating therapist at Hope noted Plaintiff was not truthful concerning her use of illegal substances. There is substantial evidence in the record to support this reasoning.

Further, the ALJ noted that the medical evidence showed Plaintiff's medications worked well when she was compliant. (TR 22). There is substantial evidence in the record to support this reasoning. As the ALJ reasoned, Plaintiff's treatment records simply do not support her testimony and reports of severe, disabling mental impairments. In consideration of all of the evidence in the record, it is apparent that the ALJ did not err in assessing Plaintiff's RFC for work and that substantial evidence supports that finding. Further, the VE's testimony provides substantial evidence to support the ALJ's step five finding. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     June 1st            , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     12th      day of    May      , 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE